587 P.2d 260

**STATE of Arizona, Appellee,**

v.

**Maurice Lee HEBERLY, Jr., and Roger Louis Thyfault, Appellants.**

**No. 1 CA–CR 3136.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 17, 1978.

Rehearing Denied Nov. 21, 1978.

Review Denied Dec. 5, 1978.

John A. LaSota, Jr., Atty. Gen., by William J. Schafer, III, Chief Counsel, Criminal Division, Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Robert L. Storrs, Phoenix, for appellants.

## OPINION

FROEB, Chief Judge.

Appellants, Maurice Heberly, Jr. and Roger Thyfault, were convicted following a submission on stipulated evidence of possession of marijuana for sale, a felony. The court entered judgment and suspended the imposition of sentence on each appellant for three years and ordered that each pay a fine and surcharge of $244.00. In this appeal appellants question the validity of the search which produced the contraband, the sufficiency of the evidence to sustain a conviction for possession of marijuana for sale, and the propriety of the court's simultaneously placing them on probation and imposing a fine.

On April 11, 1977, Officer Reid Honea of the Chandler Police Department was dispatched to the Chandler Municipal Airport. He had received a call from Wayne Lindquist, the airport manager, and an attendant, George Kasal. Lindquist told Honea that five individuals had arrived at the airport in a van, unloaded several suitcases into a private aircraft, purchased fuel for the aircraft, paying cash, and had been acting very suspiciously. He related that they had opened a small suitcase on the wing of the aircraft while Kasal was refueling it and were "clowning around," joking, and pointing into the open suitcase. When Kasal walked around the edge of the wing to see what was going on, the suitcase was slammed shut and put into the aircraft. Following this, the aircraft with three of the persons taxied to the runway to take off on a flight to Kansas. Two adults and a child remained behind in the van. Lindquist also advised Honea that the aircraft and its occupants fit a federal "profile" for narcotics smuggling aircraft which had been provided him by Officer Honea and a member of the United States Treasury Department. The details of this profile are established in the testimony, but the profile itself is not part of the record. At Officer Honea's request, Lindquist had the tower ask the plane to return to the terminal area. The pilot complied and the three occupants left the aircraft and sat down on a grassy area near the terminal building.

After Honea arrived at the airport, he first talked to the two adults and child who were inside the van. When he identified himself as a police officer, they became nervous and perspired. Honea noticed that

the hands of one were shaking. Their answers to questions were evasive and reluctant. They advised Officer Honea that they had brought the three occupants of the aircraft to the airport from Scottsdale at the request of a friend, but denied knowing their names or who they were. They said they were waiting so the child could watch the plane take off. Honea then walked to the south part of the airport terminal and spoke with the three persons who had been inside the plane. He asked to see the pilot, and one of the three, Arthur Alexander, so identified himself. Honea then asked Alexander to move away from the others and go over to the aircraft with him. Honea explained at the suppression hearing that he wanted to talk to him alone, feeling that it was a matter to discuss on a one-to-one basis.

Officer Honea advised Alexander of the nature of the phone call he had received from Lindquist regarding the suspicious activity. He advised Alexander that it was a felony to possess even a small amount of narcotics in Arizona. Alexander responded that he was not aware of this. Honea also told him that he had no search warrant and he did not even know if he could get one, but that he would try to get one if he deemed it necessary. Alexander then asked Honea what he wanted him to do. Honea replied that he could start by showing him the suitcase which had been opened on the wing and prove, one way or the other, whether or not it contained narcotics. In response, Alexander took a suitcase from the aircraft, placed it on the wing, pointed to it, and said, "There you are." Honea looked at the suitcase, noted that there was a slight bulge on the top of it, and unzipped a compartment. He looked inside and noticed a plastic bag containing what appeared to be marijuana.

He immediately advised Alexander of his rights and requested another officer to come to the aircraft with the two passengers, appellants Thyfault and Heberly. They were in turn advised of their rights, frisked, and placed under arrest. The aircraft and all the luggage inside the aircraft were then searched. Marijuana was found inside two of the suitcases and an ice chest, which was also packed in the luggage area. The officers did not obtain a search warrant before searching the airplane or its contents.

## LAWFULNESS OF THE SEARCH

Appellants contend that the search of the baggage by Officer Honea without a warrant violated the search and seizure provision of the fourth amendment to the United States Constitution. The State argues that there was probable cause coupled with exigent circumstances sufficient to uphold the search and, in the alternative, asserts that consent to search was voluntarily given by Alexander.

We reject the argument that there was consent to the warrantless search. The events at the Chandler airport have been recited earlier. It is true that a search may be conducted without probable cause if it is brought about by consent voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A third party in appropriate circumstances may give consent to search the effects of another. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *State v. Tucker*, 118 Ariz. 76, 574 P.2d 1295 (1978). Thus, it is not automatically fatal to finding consent here that the suitcase handed to Honea by Alexander actually belonged to Thyfault. Consent given by a third person for the search of the effects or luggage of another is valid only if the third person possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *State v. Tucker, supra.* The Supreme Court explained the concept of common authority in *United States v. Matlock*, 415 U.S. at 171, fn. 7, 94 S.Ct. at 993, 39 L.Ed.2d at 250:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical

and legal refinements, * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

This language was adopted by the Arizona Supreme Court in *State v. Tucker*, 118 Ariz. at 78, 574 P.2d at 1297.

■ The initial question then, is whether Alexander had "joint access or control for most purposes" which gave him the right to permit the inspection of Thyfault's suitcase and that Thyfault had assumed the risk that Alexander might permit his suitcase to be searched. There is no evidence or any inference in this case, however, that Alexander had such authority. The State argues that the pilot of a private aircraft has the authority to consent to a police search of a passenger's luggage, but refers us to no case, rule, or statute so holding. The Supreme Court of Arizona has held that a common carrier may search parcels entrusted to it for delivery and may call upon the police to inspect such parcels. *State v. Fassler*, 108 Ariz. 586, 503 P.2d 807 (1972). There is, however, no indication here that this private aircraft was operating as a commercial carrier.

The other theory argued by the State to uphold the search is based upon probable cause. When we assess the totality of facts known to Officer Honea and the circumstances as they developed at the scene, we hold that probable cause and exigent circumstances were present which validated the warrantless search. *State v. Sardo*, 112 Ariz. 509, 543 P.2d 1138 (1975).

■ Probable cause is information sufficient to justify belief by a reasonable man that an offense is being or has been committed. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Probabilities are not certainties but, rather, are "the factual and practical considerations of everyday life on which reasonable and pru-

dent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949); *State v. Stauffer*, 112 Ariz. 26, 28, 536 P.2d 1044, 1046 (1975). Facts sufficient to show probable cause to search may be gathered by the police after a vehicle is legally detained. *State v. Gunter*, 100 Ariz. 356, 414 P.2d 734 (1966). Search and seizure rules applicable to motor vehicles are also applicable to airplanes. *State v. White*, 118 Ariz. 47, 574 P.2d 840 (App.1977). The officers arrived at the airport with information from Lindquist that the travelers fit a federal profile for narcotics smuggling. The suspicion which this produced would not by itself have supported the search. Officer Honea's conversation with the occupants of the van, however, further confirmed the possibility of illegal activity. When Honea thereafter spoke with Alexander, the pilot, and heard him state surprise that possession of narcotics is a felony in Arizona, we hold that probable cause then existed for the search which followed. These events would lead a reasonable person to believe that the aircraft probably contained contraband. Although we are not referred to a case involving this precise fact situation, we have considered several recent Arizona cases dealing with probable cause which are helpful. *See State v. Million*, 120 Ariz. 10, 583 P.2d 897 (1978); *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978); *State v. Walker*, 119 Ariz. 121, 579 P.2d 1091 (1978). *State v. Sardo*, earlier cited is also instructive on this issue.

■ Exigent circumstances are also necessary to support the warrantless search. *State v. Sardo*. They are clearly present here in view of the mobility of the aircraft and its imminent departure for Kansas. *State v. White, supra*. Moreover, another exigency is here, namely: the van and its occupants. When Officer Honea decided to search the luggage it was not known whether the occupants of the van had any connection with suspicioned illegal activities. The transiency of these persons at the scene and their mobility contributed further to the exigency of the circumstances.

Turning then to the search itself, when Honea discovered the marijuana in the navy blue and red suitcase (handed to him by Alexander and which later was discovered to belong to Thyfault), he was justified in placing all three travelers under arrest and searching the contents of the three other suitcases and ice chest found aboard the airplane.

Appellants argue that the search of luggage found aboard the aircraft after the blue and red suitcase was opened was in violation of the holding of the United States Supreme Court in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), followed by this court in *State v. Randall*, 116 Ariz. 371, 569 P.2d 313 (App.1977). They argue that once the first suitcase was searched and the three subjects were placed under arrest, the police should have impounded the luggage unopened and obtained a search warrant. We disagree that the search of the baggage at the scene was barred by either case. In *Chadwick*, the locked trunk was seized from the automobile and taken unopened to a building where no one but police agents had access and held for half an hour before it was broken into and searched. The Supreme Court held that under these circumstances a warrant should have been first obtained. The situation was different here. The suitcases and ice chest were not locked and they were not first taken to a sequestered place. Opening the baggage immediately had the potential of revealing the nature of the contraband and the specifics as to ownership; it also could have implicated or exonerated the occupants of the van who were not under arrest. *State v. Randall* is inapposite for the same reasons that *United States v. Chadwick* is not controlling.

## SUFFICIENCY OF THE EVIDENCE

Appellants claim that the evidence was insufficient to convict them of possession of marijuana for sale. We agree. In reviewing the evidence, we have considered it in the light most favorable to the State and have resolved all reasonable inferences against appellants. *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976). Nevertheless, there is no evidence that either appellant possessed the seized marijuana for the purpose of sale.

Appellant Thyfault admitted ownership of $1695 found in the navy blue and red suitcase. Inside the same suitcase, officers seized a plastic sack containing 47 grams of marijuana. They also found 4.83 grams in a pouch taken from his person. There is evidence that appellant Heberly owned the blue-grey suitcase which contained 441.98 grams of marijuana. (There are 453.592 grams to a pound.) Standing alone, this evidence does not support the conviction of possession of marijuana for sale. A complete search of the record fails to reveal any other evidence. An ice chest seized from the aircraft contained 385.41 grams of marijuana in a brown sack and 520.03 grams of marijuana separated into 24 individual plastic bags. The ice chest also contained an aircraft pilot's log book belonging to Alexander. There is no evidence connecting either Thyfault or Heberly to the use, control, or ownership of the ice chest nor any of its contents. Since the evidence clearly will support a conviction of each appellant for possession of marijuana, we modify the judgment of conviction from possession of marijuana for sale to possession of marijuana and remand the case to the superior court for sentencing upon the lesser included offense. *Cf. State v. Torres*, 109 Ariz. 421, 510 P.2d 737 (1973); *State v. Eliason*, 25 Ariz.App. 523, 544 P.2d 1124 (1976).

## FINE AND PROBATION

Appellants' final issue questions the imposition of a fine in connection with probation. They cite A.R.S. § 36–1002.10 as prohibiting a fine unless the defendant is given a prison sentence, referring to a holding to this effect in *State v. Donahoe*, 118 Ariz. 37, 574 P.2d 830 (App.1977).

The *Donahoe* case so holds but its operative facts preceded the amendment of A.R.S. § 13–1657(A)(1), effective June 27, 1976, which authorized the trial court to levy a fine as a term of probation. Prior to

the amendment, a fine was not assessable against a defendant placed on probation. *See State v. Pitts*, 26 Ariz.App. 390, 548 P.2d 1202 (1976). This leads, then, to a consideration of whether there is a conflict between the provisions of A.R.S. § 36–1002.10 and A.R.S. § 13–1657(A)(1) on the question of whether a narcotics offender can be simultaneously placed on probation and fined. We find no conflict. A.R.S. § 36–1002.10 provides that a fine may be added to but not given in lieu of a prison sentence. When a defendant is convicted of a narcotics offense and is placed on probation, A.R.S. § 13–1657(A)(1) applies, and the sentencing court may exercise its discretion and impose a fine.

For the reasons stated, the sentences are vacated, judgments of conviction are modified in accordance with this opinion, and the case is remanded for resentencing.

DONOFRIO, J., concurs.

HAIRE, Presiding Judge, dissenting:

I am of the opinion that there was not a sufficient showing of probable cause to justify the warrantless search conducted in this case.

Police possess probable cause to search when they possess information sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The information which Officer Honea possessed did not meet this requirement. All that he knew was that the aircraft and its occupants conformed to some unspecified and undocumented profile which had been previously supplied to the airport authorities. Other suspicious circumstances pointed to by the officer at the suppression hearing were that they had loaded a large amount of luggage into the aircraft, had paid cash for their gasoline, had nervous mannerisms, long hair and some facial hair, and that they had acted in a suspicious manner in relation to the briefcase that was opened on the aircraft wing. These circumstances do not, in my opinion, warrant a man of reasonable caution to believe that a felony was being committed. It is interesting to note that Officer Honea himself did not believe that he had probable cause to search the airplane or its contents. For example, he testified that he had told the pilot that he did not even know if he could get a search warrant. He also testified that he did not believe that he would have been able to enter the aircraft on the basis of what he knew at that time. Furthermore, the prosecutor, in his response to the motions to suppress filed in the trial court, stated that he agreed with the defense's contentions that there had been no probable cause to search, and relied solely on the contention that the search was valid because of the consent given by the pilot. I agree with the majority's holding that under the facts the search cannot be upheld under the consent exception.

Since appellant's arrest and subsequent search of the interior of the aircraft and the rest of the luggage was predicated upon finding the marijuana during the initial illegal intrusion into appellant Thyfault's briefcase, I would hold that the remainder of the marijuana was the fruit of this initial illegal search and all of it was tainted thereby. As fruit of an illegal search, it should have been suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In my opinion there was neither probable cause nor a valid consent to the search, and the trial judge should have granted the motion to suppress. I would therefore reverse the judgments and sentences imposed upon defendants.